# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 270 | **DATE** | 10/15/2001 |
| **CASE TITLE** | Joseph Metz & Son, etal vs. The Village of Lyons, etal | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Defendants' motions to dismiss (22-1, 29-1, 30-1) are denied in part and granted in part. Defendants' motions to dismiss as to Counts I-III and V - IX are granted. We deny the defendants' motions to dismiss as to Count IV to the extent it pertains to the individual liability of defendants Kevin Close and Patrick Burelle, but grant the motion to dismiss as to Count IV as it pertains to all other defendants.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | OCT 16 2001 | |
| | Notified counsel by telephone. | | date docketed | 36 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING | 10/15/2001 | |
| | | 01 OCT 16 AM 8:11 | date mailed notice | |
| GL | courtroom deputy's initials | | GL | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOSEPH METZ & SON, INC., an Illinois )
Corporation; JOHANNA M. METZ, Vice President )
of the Corporation, KATHERINE METZ )
CATINO; LORELEI T. MALMBORG; MARK R. )
METZ; CHRISTIAN H. METZ; MARGARET )
METZ COLBERT; MARY ANN LEWIS; HENRY )
J. METZ; DEJAN DRAGOJEVIC; DAMIR )
MISSBRENNER and ROBERT CHESKEY, )
)
                   Plaintiffs, )
) 01 C 0270
     v. )
)
THE VILLAGE OF LYONS, ILLINOIS, an )
Illinois Municipal Corporation; DAVID A. VISK, )
as Village President, and individually; ROBERT )
SULLIVAN, as Trustee, and individually; MARK )
ANDERSON, as Trustee and individually, )
TIMOTHY TVRDIK, as Trustee and individually; )
GARY BENEDIK, as Trustee and individually; )
GREGORY BOKSA, as Trustee and individually; )
and PATRICIA KRUEGER, as Trustee and )
individually; RIVERWALK PARTNERS, L.L.C., )
a corporation, d/b in the State of Illinois and )
TOM WALSH as Manager or Director of )
RIVERWALK PARTNERS, L.L.C., and individually; )
KEVIN CLOSE, as Manager of the Village of )
Lyons and individually; and PATRICK BURELLE, )
as Building and Code Director of the Village of )
Lyons, and individually, )
)
                   Defendants. )

DOCKETED
OCT 1 6 2001

MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, Chief Judge:

      Plaintiffs have filed a nine count Amended Complaint against the Village of Lyons (the "Village"), including its trustees, president, and two employees. Also named as defendants are Riverwalk Partners, L.L.C. ("Riverwalk") and Tom Walsh as manager of Riverwalk. Plaintiffs' complaint centers around allegations that the Village improperly adopted a tax increment financing

1



("TIF") district and subsequently violated Plaintiffs' property and civil rights in their efforts to implement the district. Counts I-V seek relief under 42 U.S.C. § 1983. Counts I and II of the Amended Complaint allege, respectively, that the Village violated Plaintiffs' equal protection rights and due process rights as guaranteed under the Fourteenth Amendment when the Village illegally passed TIF ordinances and subsequently used various means in an effort to get Defendants to sell their land. Count III alleges an unconstitutional taking without just compensation under the Fifth and Fourteenth Amendments and the Illinois Constitution as a result of the diminished value of Plaintiffs' land. Count IV alleges violation of various rights by each defendant in his or her individual capacity. Count V alleges a federal civil conspiracy by and among the various defendants, including Riverwalk and Tom Walsh, to deprive the Plaintiffs of their constitutional rights.

Counts VI-IX are pendant state law claims alleging violation of certain rights. Count VI alleges interference with Plaintiffs' business expectency. Count VII alleges that the ordinances enacting the TIF district created by the Village are unconstitutional under the Illinois constitution. Count VIII alleges a state civil conspiracy by and among the various defendants, including Riverwalk and Tom Walsh, to deprive the Plaintiffs of their rights. Finally, Count IX alleges fraud and misrepresentation on the part of Riverwalk and Tom Walsh.

Defendants move to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[1] Defendants make three arguments in support of dismissal: (1) the Court lacks subject matter jurisdiction over the federal claims because they are not ripe for adjudication; (2) the Court should abstain from considering the claims at issue; and (3) the Court should dismiss each count for failure to state a claim. Regarding the Plaintiffs' pendant state law claims, Defendants argue that this court should decline jurisdiction or, in the alternative, dismiss each count for failure to state a claim.

---

[1] Defendants Tom Walsh and Riverwalk have filed a separate motion to dismiss. This Opinion resolves both motions. Except where otherwise specified or is clear from the context, "Defendants" shall mean all Defendants and not any one particular group of Defendants.

For the reasons set forth below, we grant Defendants' motion to dismiss with respect to all Counts except that portion of Count IV that pertains to the individual liability of Defendants Patrick Burelle and Kevin Close.

FACTS

The following facts are taken from the Plaintiffs' complaint and are assumed to be true for the purpose of adjudicating this motion. The Amended Complaint centers around the Village's promulgation of various ordinances creating a TIF district in August 2000.[2] Plaintiffs' properties were among the business and miscellaneous parcels designated for redevelopment within the TIF district. Beginning around April 2000, the Village, through its officers and employees and in concert with Riverwalk (the project developer), allegedly engaged in a pattern of abuse and harassment in an effort to force the Plaintiffs to sell their properties to the Village or Riverwalk and otherwise attempt to diminish the value of the Plaintiffs' property. Among the actions alleged by Plaintiffs are: (1) the use of discriminatory code enforcement procedures against Plaintiffs; (2) the use of scare tactics, like the threat of "Quick Take Condemnation," to get Plaintiffs to sell their property; (3) the misrepresentation by Riverwalk and Tom Walsh on a Special Use application that it was the owner of some properties within the district; (4) the dissemination of rumors and false information meant to isolate and alienate the owners in the TIF district from one another; (5) the intentional encouragement of one Plaintiff, Dejan Dragojevic, to expend a significant sum of money improving his property only to later be told that the property would soon be condemned; (6) the passing of an ordinance declaring a moratorium on the issuance of building permits within the TIF district, thereby preventing Plaintiffs from

---

[2] *Hispanics United of Dupage County v. Village of Addison*, 988 F.Supp. 1130, 1137 (N.D. Ill. 1997):
    Regions that meet the statute's definition of a "blighted" area may be incorporated into TIF districts, where the municipality is then authorized to acquire property in the district, by contract or condemnation, and demolish it. See 65 ILCS 5/11-74.4-3(a), S 74.4-4(c), (d).

correcting various code violations; and finally, (7) the failure of the Village to follow its ordinances and practices by not requiring Riverwalk to disclose its own ownership interests.

Plaintiffs also allege various abuses of municipal power: (1) at a April 23, 2000 Village Board meeting, the Trustees illegally granted the village manager, Kevin Close, administrative control of the Village's affairs, including all finances, record keeping, and managerial responsibilities; (2) Kevin Close thereafter refused to allow newly elected Village officers access to village records by changing the locks on all doors containing village records and ordering Village personnel to deny access to those locations; and (3) at the April 23 board meeting, police officers were placed throughout the meeting room where they openly brandished weapons in the presence of citizens in a "blatant display of deadly force." (Am. Com. ¶23(C)(4)).

Finally, Plaintiffs dispute the legality of the procedure used to pass the TIF ordinances. The irregularities cited by Plaintiffs include the failure the make the redevelopment plans reasonably available to the public, the failure of the joint review board to address written and verbal objections to the development plan, the insufficiency of the report on the redevelopment plan, and the insufficiency of the redevelopment plan itself. Plaintiffs allege that the Village's improper promulgation of the TIF ordinances and the subsequent actions intended to get Plaintiffs to sell their property were arbitrary, capricious and not in pursuit of any legitimate public interest.

ANALYSIS

A. Standard for Motion to Dismiss

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint, not decide the merits of the case. Triad *Assocs., Inc. v. Chicago Housing Auth.*, 892 F.2d 583, 586 (7th Cir.1989). In considering a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. MCM *Partners, Inc. v. Andrews-Bartlett & Assoc., Inc.*, 62 F.3d 967, 972 (7th Cir. 1995), aff'd, 161 F.3d 443 (7th Cir. 1998), cert. *denied,* 528 U.S. 810 (1999). We should not grant

4

a motion to dismiss unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Under Rule 12(b)(1), a court must dismiss any action for which it lacks subject matter jurisdiction. A district court has subject matter jurisdiction over all civil actions arising under the Constitution. See 28 U.S.C. §1331 (federal question).

B. Abstention

At the outset, Defendants' motion to dismiss argues that this court should abstain from deciding this case under the doctrine set forth in Younger v. Harris, 401 U.S. 37 (1971), and its progeny. The judicially-created abstention doctrines represent exceptions to the federal courts' "virtually unflagging obligation to exercise the jurisdiction given them." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976). Under the Younger doctrine, federal courts will not entertain a claim under § 1983 if disposition of the claim would entail ruling on issues in dispute in pending state proceedings. See Greening v. Moran, 953 F.2d 301, 304 (7th Cir. 1992). Three factors determine whether Younger abstention is appropriate under any given set of facts: (1) the presence of an ongoing, parallel state judicial proceeding; (2) the implication of important state interests; and (3) an adequate opportunity for the plaintiff to raise constitutional challenges in the state proceeding. Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982).

The first prong of the Younger test is not satisfied in the present case because there is no parallel state action. It is well settled that abstention doctrine does not apply to actions that are not parallel. AAR Int'l, Inc. v. Nimelias Enterprises, S.A., 250 F.3d 510, 518 (7th Cir., April 27, 2001). Suits are parallel if "substantially the same parties are litigating substantially the same issues simultaneously in two fora." Schneider Nat'l Carriers, Inc. v. Carr, 903 F.2d 1154, 1156 (7th Cir.1990). There simply is no parallel and ongoing state court proceeding on the present issues.

Here, Defendants make much of the fact there there is a pending state court action in the Circuit Court of Cook County entitled Gardella *v. Village of Lyons et al.,* Case No. 01 CH 07998. Much like part of the present case, the plaintiff in *Gardella* is challenging the legality of municipal conduct in the establishment of the Village's TIF district along with assorted claims of misconduct and impropriety by the Village Manager.

Defendants cite Wisconsin *Mfrs. & Commerce v. State of Wisconsin Elections Bd.,* for the proposition that "Younger abstention extends to federal plaintiffs whose interests are 'intertwined' with plaintiffs in pending state court proceedings." 978 F. Supp. 1200, 1209 (W.D. Wisc. 1997). Defendants claim that, because the state case and the present case fundamentally derive from the same set of facts, the Plaintiffs interests in Gardella are sufficiently intertwined with Plaintiffs' interests in the present case. This conclusion is unwarranted.

In Wisconsin Manufacturers, the plaintiffs in a state court proceeding made virtually the same allegations and asked for the same relief in their federal complaint. The federal complaint, however, included other plaintiffs not included in the state complaint. There, the federal court held that, despite the fact that the federal proceeding included plaintiffs not present in the state proceeding, the interests of all the plaintiffs were sufficiently intertwined so as to allow the court to abstain pending determination of the state court proceeding. Id. This set of circumstances is wholly inapposite to the present case. Here, the identity of the Plaintiffs are completely different from the plaintiff in Gardella. Moreover, the allegations in the present case, while having some overlap with Gardella, are much more broad in scope and the relief sought in the two cases is completely different. In *Gardella*, the plaintiff is primarily seeking an injunction preventing Kevin Close from serving as Village Manager and a declaratory judgment concerning some matters of Village governance. In the present case, Plaintiffs are seeking redress of several constitutional violations of their civil liberties including equal protection and due process. Thus, the first prong of the *Younger* doctrine, that there be an ongoing state proceeding, has not been satisfied. It is therefore not

necessary to inquire into the other two Younger prongs. Because the three part test has not been satisfied, we will not abstain under the Younger doctrine.

Defendants' Motion also argues that this court should abstain from considering the instant Complaint on the basis of the Burford and Pullman abstention doctrines. See Burford v. Sun Oil Co., 319 U.S. 315 (1943); Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496 (1941). We find, however, that abstention under these additional rubrics is inappropriate for the same reason – viz. the absence of a parallel state court proceeding. See AAR Int'l, 250 F.3d at 518; LaDuke v. Burlington Northern R. Co., 879 F.2d 1556, 1559 (7th Cir. 1989); Willis v. Estrada, 1992 WL 77668, *3 (N.D. Ill. 1992) (Aspen, J.) ("Before considering abstention doctrine... we must first determine whether the state and federal actions are actually parallel").

C. Williamson Ripeness Doctrine

Defendants next contend that this court lacks subject matter jurisdiction over all of Plaintiffs' federal claims under the ripeness doctrine outlined in Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985). In Williamson, the Supreme Court held that a takings claim is not ripe for adjudication if the property owner has not availed himself of an available state court procedure for seeking just compensation. Courts have also extended this ripeness requirement to due process claims and equal protection claims when those claims fall within the framework of a takings claim. Indeed, the Seventh Circuit has specifically expanded the Williamson doctrine to include procedural due process and equal protection claims in the land use context. See Forseth v. Village of Sussex, 199 F.3d 363, 369 (7th Cir. 2000); River Walk, Inc. v. City of Highland Park, 23 F.3d 164 (7th Cir. 1994) ("[A] property owner may not avoid Williamson by applying the label 'substantive due process' to the claim. So too with the label 'procedural due process.' Labels do not matter. A person contending that... regulation of the use of land has gone overboard must repair to state court"); Unity Ventures v. County of Lake, 841 F.2d 770, 775 (7th Cir. 1988) (Ripeness analysis "applies as well to equal protection and

7

due process claims"). As such, each of Plaintiffs' federal claims must be examined individually to determine whether they are subject to the Williamson requirements.

1. Applicability of Williamson to the Takings Claims - (Count III)

Plaintiffs' takings claim is based essentially on the alleged fact that, by implementing the TIF district and taking certain other actions, the Village has deprived Plaintiffs of their constitutionally protected property interests without just compensation. Such a claim is squarely within the rubric of Williamson and should be examined as such.

Williamson requires the satisfaction of two requirements before a taking claim is deemed ripe for federal adjudication: "(1) the 'Final Decision Requirement': the plaintiff must demonstrate that he or she received a 'final decision' from the relevant government entity and (2) the 'Exhaustion Requirement': the plaintiff must have sought compensation through the procedures the State has provided for doing so." *Forseth*, 199 F.3d at 372 (citing Williamson, 473 U.S. at 194)(internal citations omitted). Like the court in *Forseth*, we will examine the second prong of the Williamson test first. Here, the Plaintiffs have failed to allege that they have sought compensation in state court for the taking of their property. For example, Illinois provides an inverse condemnation action for property owners who are harmed by the government's actions. *Biddison v. City of Chicago*, 921 F.2d 724, 727 (7th Cir. 1991). Plaintiffs could have, but apparently have not yet, availed themselves of the opportunity to file an inverse condemnation proceeding in state court. Because Plaintiffs have failed to satisfy the second prong of the Williamson test, we need not inquire into the first prong. As a result, Count III (the takings claim) must be dismissed without prejudice as lacking ripeness.

2. Applicability of Williamson to Due Process - (Count II)

Plaintiffs, in essence, base their due process claim on the fact that the Village passed the TIF ordinances in a manner that was arbitrary and capricious and have thereafter, as a result of the TIF

8

designation, treated Plainitffs in a manner that was unequal and arbitrary. This claim is not ripe for our review.

The Williamson ripeness requirement applies equally to due process violations under the rubric of a takings claim. Hager v. City of West Peoria, 84 F.3d 865, 869 (7th Cir. 1996) ("The exhaustion requirement of Williamson County applies whether plaintiffs claim an uncompensated taking, inverse condemnation, or due process violation"); Forseth, 199 F.3d at 363 (7th Cir. 2000) (substantive due process claim in the takings context subject to ripeness requirement). As such, Count II (substantive due process) is hereby dismissed without prejudice as unripe for our review.

### 3. Applicability of Williamson to Equal Protection - (Count I)

Plaintiffs base their equal protection claim on alleged unequal, malicious, and vindictive treatment by the Village. Moreover, the Plaintiffs claim to have been subjected to "unconstitutional municipal action with no rational or viable governmental or public purpose." (Am. Compl., Count I, ¶53). This claim is not ripe for our review.

The Seventh Circuit has read Williamson broadly by rejecting attempts to label takings claims as 'equal protection claims' and thus avoid the ripeness requirement. Forseth, 199 F.3d at 370. However, the Seventh Circuit has recognized "that bona fide equal protection claims arising from land-use decisions can be made independently from a takings claim without being subject to Williamson ripeness." Id. (citing Hager v. City of West Peoria, 84 F.3d 865, 870 (7th Cir. 1996)). Thus, an equal protection claim will not be barred under Williamson so long as the claim "is not merely an attempt to get a takings claim under the radar." Vigilante v. Village of Willmette, 88 F.Supp.2d 888, 890 (N.D. Ill. 2000).

Unfortunately, Plaintiffs in this case have not successfully alleged that their equal protection claim is anything more than a disguised takings claim. In Hager, the court distinguished between the plaintiff's equal protection claim and his takings claims by noting that (1) the plaintiff sought only injunctive relief rather than damages and (2) the plaintiff's equal protection claim would evaporate

9

if the defendant city actually treated all similarly situated people equally. Hager, 84 F.3d at 870. Here, the Plaintiffs fail on both counts. First, Plaintiffs do not merely seek injunction relief. Rather, they seek specified monetary damages. (Am. Compl., Count I, ¶56). Second, Plaintiffs do not allege that they were treated any differently than other similarly situated property owners within the TIF district. Plaintiffs do allege that they are being treated differently than property owners who are not within the TIF district (that "class of owners... in Lyons as a whole." (Am. Compl., Count I, ¶53)). That fact, however, is merely another part of their underlying takings claim – that is, their dispute about the legality of the TIF designation itself– rather than a separate and distinguishable bone fide equal protection claim. As such, Plaintiffs' Count I falls under the rubric of the Williamson ripeness analysis and is hereby dismissed without prejudice.

## D. Liability of Defendants In Their Individual Capacities - (Count IV)

Plaintiffs' Count IV alleges constitutional violations of Plaintiffs' civil rights against the Defendants in their individual capacities. Because the analysis for the Village President and Trustees is different than for Tom Walsh, Patrick Burelle, and Kevin Close, they will be discussed separately.

### 1. Claim Against Village President and Trustees in their Individual Capacities

The gravamen of Plaintiffs' complaint against the Village President and Trustees is that their approval of the Lyons TIF district, and their alleged behavior with regard to the properties in the district, deprived the Plaintiffs of their constitutional rights. Moreover, Plaintiffs assert that such actions were the result of improper motivations and not based upon any viable public purpose. Finally, Plaintiffs allege that Defendants exceeded their lawful delegated authority and that their actions regarding the Plaintiffs and their property were ultra vires.

Local legislators, like the Village President and Trustees here, "are entitled to absolute immunity from § 1983 liability for their legislative activities." Bogan v. Scott Harris, 523 U.S. 44, 54 (1998). "Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" Id. (citation omitted). The question then is whether the actions complained of

are within the sphere of legislative activity and thus immune from liability. The Court in *Bogan* emphasized that absolute immunity extends to legislators regardless of alleged improper motive. The Court clearly noted that "[w]hether an act is legislative turns on the nature of the act itself, rather than on the motive or intent of the official performing it." Id.

Turning then to the nature of the act, and disregarding Plaintiffs' assertions of improper motive, it is clear that the acts of the Village President and Trustees were legislative in nature. The ordinances implementing the TIF district were passed by the Village Board of Trustees on August 8, 2000; such an act is quintessentially legislative in nature. As such, the President and the Board of Trustees enjoy absolute immunity from liability in their individual capacities based upon their legislative action.

2. Claim Against Other Village Officers

Count IV also alleges constitutional and state law violations by Village Manager Kevin Close and Building and Code Director Patrick Burelle in their individual capacities. The actions complained of include the improper and discriminatory enforcement of zoning codes and irregularities following a Village election that led to Kevin Close effectively and improperly taking control of Village finances. Defendants argue in their motion to dismiss that Close and Burelle should enjoy qualified immunity from liability under § 1983. Plaintiffs respond that public officials performing discretionary functions are only immune from suits if their conduct does not violate a clearly established statutory or constitutional right and that, moreover, Close and Burelle clearly violated such rights.

As Plaintiffs point out, qualified legislative immunity shields officials performing discretionary functions from liability in suits brought against them in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Trust & Inv. Advisors, Inc. v. Hogsett*, 43 F.3d 290, 298 (7th Cir. 1994). As the Seventh Circuit explained in *Hogsett*,

11

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official's action is protected by qualified immunity unless the very action in question has been previously held unlawful. . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Id. Thus, the purported unlawfulness of an official's actions must be clear and apparent before that official can be sued in his individual capacity.

Burelle, as Building and Code Director of the Village of Lyons, is presumably the official responsible for those allegations in the Plaintiffs' complaint regarding improper and discriminatory building code enforcement.[3] Assuming, as we must for purposes of this motion, that the allegations in the Amended Complaint are true, Burelle's actions toward Defendants were malicious, reckless, and in violation of well known legal rights of which Burelle knew or should have known. (Am. Compl., Count IV, ¶53-55). As such, and because Plaintiffs' allegations in this regard are well-pled, Burelle cannot enjoy qualified immunity in his individual capacity. Likewise for Kevin Close. Plaintiffs have alleged that Close acted illegally in his actions following the election of a new Village Mayor and Board Members and that moreover this behavior was malicious, reckless, and in violation of well known legal rights of which Close knew or should have known. As such, and because Plaintiffs' allegations in this regard are well-pled, Close cannot enjoy qualified immunity in his individual capacity.[4]

3. Claim Against Tom Walsh as an Individual

Plaintiffs' claim against Tom Walsh concerns his alleged misrepresentation (as manager of Riverwalk) of an ownership interest in one of the properties within the TIF district on an application

---

[3] Although the Amended Complaint is not clear as to the putative bases of Burelle's and Close's liability in their individual capacities, we are obliged to consider the Motion to Dismiss in the light most favorable to the non-movant.

[4] If, however, discovery should produce no substantiation for Plaintiffs' allegations concerning Close and Burelle, this court would of course entertain a Motion for Summary Judgment in favor of those Defendants.

12

for a Planned Unit Development variance before the Village Zoning Board of Appeals. The property in question actually belonged to one Michael Pantelin, who is not a Plaintiff in this case.

It is unclear on what basis Plaintiffs allege that Tom Walsh has violated their rights. Michael Pantelin, the property owner in question, is not even a party to this action. As such, it is our determination that Plaintiffs do not have standing to bring a claim against Tom Walsh. This court can raise the issue of standing sua *sponte*. Retired *Chicago Police Assoc. v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996), cert. *denied*, 519 U.S. 932 (1996). The general rule of standing is that "an injured party must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Id. (citations omitted). Plaintiffs here have wholly failed to allege any reason why Tom Walsh's alleged misrepresentation on a variance application regarding property unrelated to this action could have possibly caused them any injury-in-fact. As such, Plaintiffs' Count IV is dismissed to the extent it regards Defendant Tom Walsh.[5]

To conclude our resolution of Count IV of Plaintiffs' Amended Complaint, we dismiss Count IV with regard to Tom Walsh (because Plaintiffs lack standing) and with regard to the Village President and Trustees in their individual capacities (because these Defendants enjoy absolute immunity). However, we decline to dismiss Count IV with regard to Defendants Kevin Close and Patrick Burelle for the reasons outlined above.[6]

---

[5] Even assuming that Plaintiffs had standing to bring their claim against Tom Walsh, Plaintiffs must show that Walsh was a state actor. Private individuals, in the §1983 context, can only be held liable when their behavior is "fairly attributable to the state." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). Plaintiffs here have failed to make any allegations in their Amended Complaint that Walsh's conduct could be attributable to the state. Thus, Plaintiffs' Count IV, with regard to Tom Walsh, could be dismissed for failure to state a claim.

[6] We are cognizant of the fact that a resolution of the Gardella action (described above) could influence the issues in the present case, particularly those allegations concerning the legitimacy of the Village Manager ordinance and the conduct of Kevin Close. However, as noted above, we are obliged for the purpose of this Motion to accept all

13

### E. Violation of Plaintiffs' Civil Rights Through Conspiracy - (Count V)

Plaintiffs' final federal claim is one of conspiracy between the Village, its officers and employees, Tom Walsh, and Riverwalk to deprive Plaintiffs of their constitutionally protected rights. Plaintiffs' allege, again through § 1983, deprivations of rights secured through substantive due process and equal protection. Plaintiffs claim that all the Defendants, acting in concert, sought to (1) promulgate an invalid TIF district, (2) coerce Plaintiffs to sell their property at below market rates, (3) engage in biased and improper enforcement of zoning codes, (4) misrepresent the true ownership of property actually owned by Michael Pantelin, (5) improperly devalue the properties within the TIF district and, generally, (6) deprive them of their rights. This Count must also be dismissed.

We have already dismissed, for various reasons, Plaintiffs' underlying equal protection and substantive due process claims. Because the underlying federal claims have already been dismissed, Plaintiffs' conspiracy claim based upon those Counts must also be dismissed without prejudice. See, e.g., Collins v. Village of Woodridge, 96 F.Supp.2d 744, 755 (N.D. Ill. 2000).

Pursuant to 28 U.S.C. § 1367(c)(2), we decline to exercise supplemental jurisdiction over the remaining state law claims (Counts VI-IX).

### CONCLUSION

We therefore grant the Defendants' Motions to Dismiss as to Counts I - III and V - IX. We deny the Defendants' Motions to Dismiss as to Count IV to the extent it pertains to the individual liability of Defendants Kevin Close and Patrick Burelle, but grant the Motion to Dismiss as to Count IV as it pertains to all other Defendants.

---

allegations in the Amended Complaint as true. Notwithstanding this fact, we will stay resolution on the merits of the remaining count in this action pending resolution of the Gardella action. At that time, the parties will be asked to brief the preclusive effect, if any, that the state court determination may have on the instant action. In the meantime, the parties should proceed with discovery on Count IV as it pertains to Close and Burelle.

14

MARVIN E. ASPEN
United States District Judge

Dated: 10/15/01